UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: GIANNI N. SPRADLEY,<br><br>*Debtor*<br><br>THE OAKS AT NORTH BRUNSWICK CONDO ASSOC. INC.,<br><br>*Appellant,*<br><br>v.<br><br>GIANNI N. SPRADLEY,<br><br>*Appellee.* | Civil Action No.: 18-cv-263 (PGS)<br><br>**MEMORANDUM AND ORDER** |

      This matter comes before the Court on appeal from the Bankruptcy Court for the District of New Jersey ("Bankruptcy Court"). Appellant-Creditor, the Oaks at North Brunswick Condominium Association, Inc. ("Oaks" or "Appellant"), appeals from the Bankruptcy Court's December 26, 2017 Order to strip down Oaks' claim from the Chapter 13 bankruptcy plan of Appellee-debtor Gianni Spradley ("Appellee" or "Spradley"). For the reasons set forth below, the case shall be remanded back to the Bankruptcy Court for additional fact finding to certify Oaks fulfilled all the necessary conditions to perfect its lien to an elevated priority over the first mortgage.

### Factual History

      The factual history and finer details of this dispute were set forth before the Bankruptcy Court. This Court therefore reiterates only the facts relevant to the present appeal.

1

Oaks was established pursuant to the Master Deed and Declaration of Restrictive and Protective Covenants, Easements, Charges, and Liens for the Oaks at North Brunswick, A Condominium ("Master Deed") and the By-Laws for the Oaks at North Brunswick Condominium Association, Inc. ("By-Laws") (collectively as "the Governing Documents"). (Appellant Brief at 2-3, ECF No. 4). The Governing Documents were dated November 13, 1980 and recorded in the Office of the Middlesex County Clerk on November 13, 1980. *Id.* at 3.

Spradley owns and resides in a unit within Oaks. *Id.* By accepting title to the property, Spradley joined Oaks' Association and agreed to be bound by the Governing Documents while holding title to the property. *Id.*

Pursuant to its Governing Documents, as well as New Jersey law, Oaks is responsible for clearing snow, maintaining streetlights, disposing of garbage, and other assorted maintenance duties associated with the common grounds its members share. *Id.* at 15. To fund these services, Oaks collects a monthly maintenance charge from each member of the Association, as provided in the Governing Documents. (Appellant Appendix at 55, ECF No. 4-1). The Governing Documents further state that any unpaid monthly maintenance charge may constitute a lien if filed with the County Clerk. More precisely, it states:

> [A]ll charges, expenses and assessments chargeable to any unit shall constitute a lien against said unit in favor of [the Oaks], which lien shall be prior to all other liens except: (1) assessments, liens and charges for taxes past due and unpaid on the unit, and (2) bona fide mortgage instruments, duly recorded, and (3) the [Oaks]'s lien shall be recorded in the Clerk's Office of Middlesex County pursuant to the Condominium Act. The charges and expenses represented in the usual monthly maintenance charge shall become effective as a lien against each unit on the first day of each month; additional or added assessments, charges and expenses, if any, chargeable to units and not covered by the usual monthly maintenance charge, shall become effective as a lien against each unit as of the date when the expense or charge giving rise to such additional or added assessment was incurred by the [Oaks]. . . . In addition, such charges and expenses shall bear interest from the due date as set by the [Oaks] at such rate not

exceeding the legal interest rate as may be established by the [Oaks] or, if no rate is established, at the legal rate.

*Id*. at 55-56.

Due to failure to pay monthly maintenance charges, Spradley was referred to collections on or around October of 2008. (Appellant Reply Brief at 8, ECF No. 6). The Oaks subsequently recorded four liens totaling $33,211.62 against Spradley's property: January 21, 2009, August 14, 2013, November 18, 2014, and May 28, 2015. (Appellant's Appendix at 13, 30-43, ECF No. 4-1). Additionally, a foreclosure complaint was filed on July 19, 2012 by Greentree Servicing against Spradley. *Id*. at 26.

On March 28, 2017, Spradley filed for Chapter 13 bankruptcy, valuing his unit at $169,000 and subject to a first mortgage of $172,000. (Appellee's Brief, ECF No. 5, at 2). In addition to the liens filed, the Oaks submitted an unsecured claim of $7,509.59 against the property. (Appellee Brief at 3 n.4).

II.

In New Jersey, liens held by condominium associations for unpaid maintenance fees are given limited priority over previously recorded mortgages by the New Jersey Condominium Act ("the Condominium Act"). *See* N.J. Stat. Ann. § 46:8B-21. Specifically, such maintenance liens may be granted limited priority over the first mortgage in an amount that equals six (6) months of maintenance fees so long as certain conditions are met. N.J. Stat. Ann. § 46:8B-21(b).

Spradley's proposed Chapter 13 plan included a Motion to Cram-Down the Oaks' maintenance lien of $33,211.62 by bifurcating the lien into a secured lien of $1,920 (six (6) months of the maintenance lien), and an unsecured claim of $31,291.62. (Appellant Brief at 4).

The Oaks filed an objection with the Bankruptcy Court, arguing that its lien was protected from bifurcation by statute (11 U.S.C. § 1322(b)(2)). The statute prevents modification

3

to claims when the claim is a security interest in real property that also serves as the debtor's principle residence. *Id.* (hereinafter, anti-modification provision).

On December 26, 2017, the Bankruptcy Court granted Spradley's Motion to Cram-Down because the Condominium Act created an independent statutory lien that barred invocation of the anti-modification provision (11 U.S.C. § 1322(b)(2)). (Notice of Appeal from Bankruptcy Court, ECF No. 1, Exhibit A at 2). Oaks subsequently appealed.

### III.

In reviewing appeals from Bankruptcy Court, this Court reviews findings of fact under a standard of clear error and legal conclusions under a *de novo* standard. *See In re Sharon Steel Corp.*, 871 F.2d 1217, 1223 (3d Cir. 1989). "A factual finding is clearly erroneous when 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *In re Cellnet Data Systems, Inc.*, 327 F.3d 242, 244 (3d Cir. 2003) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948)). This Court must accept the Bankruptcy Court's findings of historical or narrative facts unless clear error is found, but also exercises "plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts." *See Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 103 (3d Cir. 1981).

Questions of law are reviewed under a *de novo* standard. *J.P. Fyfe, Inc., of Florida v. Bradco Supply Corp*, 891 F.2d 66, 69 (3d Cir. 1989); *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 102 (3d Cir. 1981). For determinations that involve mixed questions of law and fact, a district court must apply a mixed standard of review. *Mellon Bank, N.A. v. Metro Commc'n, Inc.*, 945 F.2d 635, 642 (3d Cir. 1981). Additionally, the Bankruptcy Court's exercises

of discretion are reviewed for abuse thereof. *Kool, Mann, Coffee & Co. v. Coffey*, 300 F.3d 340, 353, 44 V.I. 419 (3d Cir. 2002).

### Analysis

In the past, in cases similar to this, the District Courts have focused its analysis on whether the Condominium Act (N.J. Stat. Ann. § 46:8B-21) creates a statutory lien independent of the consensual lien[1] arising out of the Governing Documents, thereby preventing the invocation of the anti-modification provision (11 U.S.C. § 1322(b)(2)) to cram down the Oaks' limited priority claim. *In re Holmes*, 573 B.R. 549 (Bankr. D.N.J. 2017); *In re Smiley*, 569 B.R. 377 (Bankr. D.N.J. 2017); *In re Rones,* 531 B.R. 526 (Bankr. D.N.J. 2015), *rev'd in part*, 551 B.R. 162 (D.N.J. 2016); *In Re Keise.* 564 B.R. 255, 256 n. 2. (Bankr. D.N.J. 2017), *rev'd*, 17-CV-1832, 2018 WL 624105 (D.N.J. Jan. 30, 2018). Herein, the Court enforces the Condominium Act as it is written. The relevant portion of the Condominium Act reads as follows:

> **a.** The association ***shall have a lien on each unit for any unpaid assessment duly made by the association for a share of common expenses or otherwise***, including any other moneys duly owed the association, upon proper notice to the appropriate unit owner, together with interest thereon and, if authorized by the master deed or bylaws, late fees, fines and reasonable attorney's fees; provided however that an association shall not record a lien in which the unpaid assessment consists solely of late fees. ***Such lien shall be effective from and after the time of recording in the public records of the county in which the unit is located*** of a claim of lien stating the description of the unit, the name of the record owner, the amount due and the date when due. Such claim of lien shall include only sums which are due and payable when the claim of lien is recorded and shall be signed and verified by an officer or agent of the association. Upon full payment of all sums secured by the lien, the party making payment shall be entitled to a recordable

---

[1] "A consensual lien is a security interest under the Bankruptcy code . . . (defining 'security interest' as a 'lien created by agreement')." *In re Keise*, 564 B.R. 255, 256 n. 2 (Bankr. D.N.J. 2017), *rev'd*, 17-CV-1832, 2018 WL 624105 (D.N.J. Jan. 30, 2018); *see also* 11 U.S.C. § 101(51). By taking title to the property at Oaks, Spradley agreed to the terms of the Governing Documents and the prospective lien within, thus creating a security interest.

5

satisfaction of lien. Except as set forth in subsection b. of this section, all such liens shall be subordinate to any lien for past due and unpaid property taxes, the lien of any mortgage to which the unit is subject and to any other lien recorded prior to the time of recording of the claim of lien.

**b.** *A lien recorded pursuant to subsection a. of this section shall have a limited priority over prior recorded mortgages and other liens*, except for municipal liens or liens for federal taxes, to the extent provided in this subsection. This priority shall be limited as follows:

> **(1)** *To a lien which is the result of customary condominium assessments as defined herein, the amount of which shall not exceed the aggregate customary condominium assessment against the unit owner for the six-month period prior to the recording of the lien.*
>
> **(2)** With respect to a particular mortgage, to a lien recorded prior to: (a) the receipt by the association of a summons and complaint in an action to foreclose a mortgage on that unit; or (b) the filing with the proper county recording office of a lis pendens giving notice of an action to foreclose a mortgage on that unit.
>
> **(3)** In the case of more than one association lien being filed, either because an association files more than one lien or multiple associations have filed liens, the total amount of the liens granted priority shall not be greater than the assessment for the six-month period specified in paragraph (1) of this subsection. Priority among multiple filings shall be determined by their date of recording with the earlier recorded liens having first use of the priority given herein.
>
> **(4)** The priority granted to a lien pursuant to this subsection shall expire on the first day of the 60th month following the date of recording of an association's lien.
>
> **(5)** A lien of an association shall not be granted priority over a prior recorded mortgage or mortgages under this subsection if a prior recorded lien of the association for unpaid assessments has obtained priority over the same recorded mortgage or mortgages as provided in this subsection, for a period of 60 months from the date of recording of the lien granted priority.

> **(6)** When recording a lien which may be granted priority pursuant to this act, an association shall notify, in writing, any holder of a first mortgage lien on the property of the filing of the association lien. An association which exercises a good faith effort but is unable to ascertain the identity of a holder of a prior recorded mortgage on the property will be deemed to be in substantial compliance with this paragraph.
>
> For the purpose of this section, a "customary condominium assessment" shall mean an assessment for periodic payments, due the association for regular and usual operating and common area expenses pursuant to the association's annual budget and shall not include amounts for reserves for contingencies, nor shall it include any late charges, penalties, interest or any fees or costs for the collection or enforcement of the assessment or any lien arising from the assessment. The periodic payments due must be due monthly, or no less frequently than quarter-yearly, as may be acceptable to the Federal National Mortgage Association so as not to disqualify an otherwise superior mortgage on the condominium from purchase by the Federal National Mortgage Association as a first mortgage.

N.J. Stat. Ann. § 46:8B-21 (emphases added).

Here, the Court follows the analysis of *In re Rones*. In that case, the debtor, owner of a condominium within the Whispering Woods Condominium Association, filed a Chapter 13 plan after failing to pay certain fees and charges as required by the association's by-laws. *In re Rones*, 551 B.R. at 165. The debtor's property was valued at $170,000 and there was a $288,063.37 mortgage on the property. *Id.* The association held a lien against the property in the amount of $18,761.76, but the debtor's proposed only paying $1,494, citing the Condominium Act. *Id.* The Bankruptcy Court overruled the association's objection, finding that aside from the six-month fee accrual, the remainder of the lien was unsecured and could therefore be stripped off. *Id.*

On appeal, Judge Wolfson found that the Condominium Act "does not apply only to 'payment' of those liens" but rather provides "that 'a *lien* recorded pursuant to subsection a. of this section *shall have a limited priority* over prior recorded mortgages and other liens.'" *Id.* at

7

170 (quoting N.J. Stat. Ann. 46:8B-21(b)(1) (emphasis added)). To that end, the Condominium Act actually elevates a portion of the lien above other claims, including limited priority over mortgages. *Id.* at 170-71. The association's maintenance lien was therefore partially secured and none of the lien could be stripped off per 11 U.S.C. § 1322(b)(2). *Id.* at 171. The case was then remanded back to the bankruptcy court.

Consistent with *In re Rones*, the six months of maintenance fees shall be given priority over the first mortgage so long as other conditions of the Condominium Act are met. The Court notes that the Condominium Act authorizes a lien for the entire amount of assessments set forth in the recording; but it elevates only a portion of said lien, the six months of assessment fees, above other liens and recorded mortgages so long as certain conditions are met. Hence, the remainder of the lien (after elevating the six months of the maintenance liens) is still a valid lien under the statute.

A bankruptcy court has the authority to "cram down" a lien to unsecured status in most situations except if it is a "claim secured only by a security interest in real property that is the debtor's principal residence." *See* 11 U.S.C. § 1322(b)(2). Here, the remainder of the lien under the Condominium Act is a security interest in real property and the unit is Spradley's primary residence. As such, the remainder of the lien would ordinarily not be subject to the cram down provision due to the language of the anti-modification provision. *See id.*

As noted above, the Condominium Act elevates priority of the amount equaling six months of the maintenance lien when other statutory conditions are met, such as whether the condominium lien was recorded prior to the association receiving a summons and complaint in a foreclosure action or a lis pendis filed as notice of the foreclosure action as well as other conditions. *See* N.J. Stat. Ann. § 46:8B-14(b)(2); N.J. Stat. Ann. § 46:8B-14(b)(6).

In this case, there are no factual findings as to whether Oaks fulfilled the statutory conditions. As such, the matter is remanded to determine whether the Condominium Act's mandate to elevate the priority of a maintenance lien is perfected under the statutory conditions.

For that reason, the Bankruptcy Court should determine whether the statutory conditions in elevating a portion of the maintenance lien were met, N.J.S.A. 46:8B-14(b), and determine the priority of the maintenance liens in accordance with this decision.

## ORDER

IT IS ON THIS 6TH day of February, 2019;

ORDERED that this matter is remanded to the Bankruptcy Court to determine whether the statutory conditions under N.J.S.A. 46:8B-14(b) are satisfied, and to determine the priority of the maintenance lien in accordance with the decision.

_____
PETER G. SHERIDAN, U.S.D.J.